IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| STEVE KLEMETTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:11cv137-MEF |
| | ) |
| NATHANIEL FOSTER, | ) |
| in his individual capacity, | ) |
| | ) |
| Defendant. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Steve Klemetti, proceeding *pro se*, commenced this action against game warden Nathaniel Foster in his individual capacity in the Circuit Court of Macon County, Alabama, asserting state law claims for malicious prosecution, false imprisonment and intentional infliction of emotional distress, and a claim pursuant to 42 U.S.C. § 1983 alleging a violation of his fourth amendment rights.  Defendant removed the case to this court on the basis of federal question jurisdiction.  This matter is presently before the court on defendant's motion for summary judgment.  Upon consideration of the motion, the court concludes that it is due to be granted.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).

For issues on which the non-movant bears the burden of proof at trial, "the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.  Instead, the moving party simply may show [ ] – that is, point[ ] out to the district court – that there is an absence of evidence to support the non-moving party's case."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(*en banc*)).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.  Id. at 324.  For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment."  Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## BACKGROUND[1]

Defendant Nathaniel Foster is a Conservation Enforcement Officer with the Alabama Department of Conservation and Natural Resources.  (Foster aff., ¶ 1).  On May 28, 2010, at about 5:00 p.m., plaintiff Klemetti was in the Uphapee Creek area of Tuskegee National Forest.  After a female college student reported to Foster that she had "just seen a nude man," Foster observed Klemetti, naked.  (Id., ¶¶ 2-4; Klemetti depo., p. 30).[2]  When Klemetti first saw defendant Foster, Klemetti was in the creek, where he had gone "to get cooled off and

---

[1]  As it is required to do, the court has viewed the admissible evidence presented on the motion for summary judgment – including plaintiff's sworn deposition testimony – in the light most favorable to the plaintiff.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). However, the only admissible evidence in the record was filed by the defendant.  The court advised plaintiff, in its order establishing the briefing schedule for the present motion, of the necessity of responding to the motion in the manner set forth in Fed. R. Civ. P. 56.  (See Doc. # 19).  However, plaintiff filed no affidavit or declaration in opposition to the motion, and the photographs and documents plaintiff filed as exhibits in opposition are not supported by any authenticating testimony. (See Plaintiff's Exhibits 1-9).  Plaintiff's exhibits are inadmissible on the present motion, as is the unsworn testimony plaintiff attempts to present through argument in his brief, and the court declines to consider them.  However, even if they had been presented in the manner required by Rule 56, plaintiff's exhibits and the statements of fact he makes in his brief would not change the court's conclusion that defendant is entitled to summary judgment.

[2]  See also Doc. # 18-4, Foster's sworn statement to warrant magistrate (incident occurred at 4:00 p.m.).

cleaned up" after relieving himself in the bushes.  (Klemetti depo., pp. 31-32, 37).[3]  Klemetti was near the public swimming area, at which – according to Klemetti – "there's usually a lot of people."  Although Klemetti could have been seen from the swimming area, no one was "out there" at the time.  (Id., pp. 23, 33; see also id., pp. 27, 32-34, 93, 95, 96 and Defendant's Exhibits 2, 3, 6, 10, and 13 to Klemetti depo.).

Foster was standing on a path above Klemetti's location in the creek.  (Klemetti depo., p. 98 and Defendant's Exhibits 19 and 20 to Klemetti depo.; Foster aff., ¶ 4).  Foster shouted, "Game Warden! Get up here!"  He asked Klemetti whether he had any weapons.  Because he was naked, Klemetti considered "making a smart remark like . . . do I look like I have any weapons?"  Instead, he responded, "No," and put on his shorts.  (Klemetti depo., pp. 37-38).  Foster asked for Klemetti's identification.  Klemetti responded that his identification was in his car, so Foster and Kelmetti walked to Klemetti's car.  (Id., p. 39; Foster aff., ¶ 4).  Foster wrote down Klemetti's driver's license information, told Klemetti that he would give the information to the Forest Service, and allowed Klemetti to leave.  (Klemetti depo., pp. 38-39, 43-44).

Before May 28, 2010, Foster had received "numerous complaints regarding a nude man at the National Forest."  (Foster aff., ¶ 3).  Klemetti had been naked in the Tuskegee National Forest on several occasions previously.  On some of those instances, other people

---

[3]  Klemetti testified that he stopped at the national forest because he had to go to the bathroom and – because "there's no real rest room" – he just "went to use the bushes."  (Klemetti depo., p. 30).

were present but at a distance "far away" from Klemetti.  The complaints Foster had received may have been about Klemetti, as people may have seen him nude "from a distance." (Klemetti depo., pp. 36-37, 50).

Foster provided an account of the incident and Klemetti's identification information to the Forest Service.  On May 30, 2010, Officer Eric Wiley of the U.S. Forest Service issued two citations to the plaintiff.  (Klemetti depo., pp. 54-56; see also Foster aff., ¶ 5).  On plaintiff's court date, however, the federal prosecutor advised the court that he was dismissing both charges and "may have to file under the Assimilative Crimes Act." (Klemetti depo., pp. 61-62;  Foster aff., ¶ 5).[4] After court, plaintiff spoke with a federal public defender and told her what had happened.  She told Klemetti that the prosecutor was "too busy with other cases" and that she "[d]idn't think they were going to pursue anything further with it."  (Klemetti depo., pp. 62-63).  The federal prosecutor suggested that Foster pursue criminal charges against Klemetti in state court.  (Foster aff., ¶ 5).

Foster consulted with the Macon County District Attorney's office, and then went to Veronica Harris, the Court Clerk/Magistrate for Macon County, and requested that she issue

---

[4] In his response to the present motion, plaintiff argues that the federal citation for disorderly conduct "was dismissed because there was no federally cognizant law so the court had no jurisdiction to try the case," and that the citation for "[b]eing publicly nude" was dismissed "because the plaintiff had presented exhibits/evidence showing that the Forest Service had not complied with the posting requirements of [36 C.F.R. §] 261.51(b) and they had no evidence of any such order existing."  (Doc. # 20, pp. 1-2).  While plaintiff may have filed a motion seeking dismissal on this basis, he acknowledges that – as he testified in his deposition – the AUSA dismissed the citations and indicated that "they would ... reissue them under the assimilated crimes act."  (Doc. # 20, p. 13; see also Klemetti depo., pp. 61-62).  There is no competent evidence in the record regarding the prosecutor's reasons for dismissing the citations.

a warrant for plaintiff's arrest on a charge of "public lewdness" in violation of § 13A-12-130

of the Alabama Code.[5]  Harris did so on July 30, 2010, setting plaintiff's bond at $1,000.00.

---

[5]  In his sworn statement to the Magistrate, Foster provided the following details regarding the offense:

> AT 4 00 PM ON MAY 28, 2010 OFF THUNDER ROAD IN NATIONAL FOREST. WALKING DOWN A TRAIL WITH 2 COLLEGE STUDENTS ONE OF THEM STATED SHE SAW A NAK[ED] MAN. LOOK FORWARD AND SEE A NAK[ED] MAN RUNNING AWAY FROM US. I PURSUE HIM ON FOOT PAST A SWIMMING AREA AND CONTINUE TOWARD A NATIONAL FOREST POND.  I FOLLOW A PATH HE HAD MADE TO UPHAPEE CREEK AND OBSERVE HIM STILL NAK[ED].  HE PUTS HIS SHORTS ON, I ESCORT HIM BACK TO HIS VEHICLE, WRITE DOWN ALL HIS INFORMATION AND ADVISE HIM HE IS NOT UNDER ARREST AT THAT TIME BUT HE WILL BE CONTACTED BY A LAW ENFORCEMENT AGENCY.

(Attachment to Harris aff.).  In the deposition excerpts before the court, plaintiff gives no testimony that conflicts with Foster's statement to the Magistrate. Plaintiff testified that he went to the bathroom in the bushes "off to the side," and then "went down to the creek to get cleaned up." (Klemetti depo., pp. 30, 32).  He also testified that Foster was the first person he saw while he was nude that day, that he first saw Foster when Foster shouted to him from the path above, and that he was then waist-deep in the water in the creek. (Klemetti depo., pp. 30, 32-34).  Plaintiff identified, on Defendant's Exhibit 1 to his deposition, the location where he went "in the bushes" before he "*went down to the creek* to get cleaned up." (Id., pp. 30, 32)(emphasis added).  However, Defendant's Exhibit 1 to plaintiff's deposition is not included in the record before the court. Plaintiff does not state how long he had been in the creek before Foster shouted at him, or assert that he was not running naked on the trail before he entered the water, and his testimony does not suggest that Foster could not have seen him well before he first saw Foster.  In responding to a request for admissions, plaintiff admitted that he was observed nude in the forest on May 28, 2010 "by one other, the defendant, not others *as far as plaintiff knows*."  (Doc. # 18-2, Plaintiff's response to request for admission No. 1)(emphasis added).  Thus, the evidence before the court does not permit a reasonable inference that plaintiff had been in the water for so long that Foster's account to the Magistrate was false.

Additionally, in testifying as to the basis for his claims, plaintiff did not claim that Foster's statement to the Magistrate was not truthful. Rather, he contended that the complaint forming the basis for the warrant was legally insufficient because: (1) the facts stated by Foster did not support the elements of the crime of public lewdness (recklessness, specifically) and, therefore, did not provide probable cause for his arrest; and (2) the incident occurred on federal land and, therefore, could not support state charges. (Klemetti depo., pp. 109-12, 114-15, 122-23; see also Plaintiff's response to Request for Admission No. 13)("Defendant violated the plaintiff's right to due process by vindictively prosecuting the plaintiff after plaintiff prevailed in Federal court. He violated

(Foster aff., ¶ 6; Harris aff. and attachment).   On August 22, 2010, Foster saw plaintiff driving on Thunder Road.   Foster turned around and followed plaintiff, pulling him over off of Highway 80.   He told plaintiff about the warrant, and asked him to get out of his vehicle and remain beside it until Macon County deputies arrived.   When the deputies arrived, Foster handcuffed Klemetti and a deputy took him to the county jail.   Foster and the other deputy stayed with plaintiff's vehicle until Foster received confirmation that a tow truck was en route.   (Foster aff., ¶ 7).   Plaintiff was released from the jail when his wife posted the bond. Plaintiff and his wife then went to the towing company, where plaintiff had to pay towing and impound charges to retrieve his car.   (Klemetti depo., p. 83).   Klemetti's state charge was set before Judge Ford of the Macon County District Court and, in November 2010, it was dismissed.   (Foster aff., ¶ 8). Foster requested that Judge Ford issue an order prohibiting plaintiff from "trespassing" in the forest and Judge Ford did so.   (Klemetti depo., p. 109).[6]

_____

Alabama Code Section 15-8-25 by not stating the facts constituting the offense in the complaint. He violated Alabama Rules of Criminal Proc. Rule 2.3 by not setting forth essential facts constituting an offense."); see also Plaintiff's brief, p. 14 (accusing Foster of swearing out a warrant "under false pretenses," but arguing that "[s]ince it is unlawful to arrest someone for half of a crime or no crime, then swearing out a complaint for a warrant and then detaining someone, handcuffing and booking that person is false imprisonment.")). While the court is required to draw all reasonable inferences from the evidence and to resolve conflicts in plaintiff's favor, the court is not required to manufacture a conflict where the competent evidence of record does not present one.

[6] There is no evidence before the court regarding the proceedings before Judge Ford, other than that the charge against plaintiff was dismissed and that Judge Ford issued a "no trespass" order of some nature. Plaintiff has not raised the issue of collateral estoppel.  Even if he had, however, the evidence of record is insufficient to permit the court to draw any conclusion as to identity of issues. See Walker v. City of Huntsville, 62 So.3d 474, 487 (Ala. 2010)(party seeking to benefit from application of collateral estoppel has the burden of proving that the issue as to which he seeks preclusion was actually litigated and determined in the prior proceeding)(citations omitted).

## DISCUSSION

Foster contends that he is entitled to summary judgment because plaintiff cannot prevail on the merits of any of his claims and, also, because Foster is entitled to "peace officer" immunity as to plaintiff's state law claims and qualified immunity as to the federal claims. Plaintiff's claims in this action all arise from Foster's actions after the termination of the federal case against the plaintiff – *i.e.*, Foster's conduct with regard to the state charge of public lewdness. (See Complaint, Doc. # 1-1; see also proposed Amended Complaint, Doc. # 14-1, ¶¶ 7-11, 13, 17; Klemetti depo., pp. 114-15).

### Probable Cause

#### State Law Claims

Plaintiff asserts three state law claims: malicious prosecution, false imprisonment, and intentional infliction of emotional distress ("outrage"). (See Complaint, Doc. # 1-1; see also proposed Amended Complaint, Doc. # 14-1). In the context of the Alabama tort of false imprisonment, "[p]robable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been ... committed." Walker, 62 So.3d at 492 (citations and internal quotation marks omitted). The definition of probable cause is similar as to malicious prosecution – "such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty" – except that it injects a subjective element into the standard. Id. (observing that the probable cause determination

does not depend on plaintiff's actual guilt but, instead, whether the defendant's "subjective belief under the circumstances" led him to believe that the plaintiff was guilty).

Foster contends that Klemetti "has *no evidence* that Foster acted without probable cause" in initiating the state criminal action.  (Defendant's brief, Doc. # 18, p. 6)(emphasis in original).  Plaintiff responds that Foster lacked probable cause to prosecute the state court action because: (1) the facts do not suggest "recklessness," an element of the charged offense of public lewdness; (2) the offense requires that someone other than a law enforcement officer must be present to satisfy the "offended or alarmed" language of the statute; and (3) Foster was "fully aware" – because of his involvement in the previously-dismissed federal prosecution – that Klemetti "acted under the National Forest rules which made plaintiff's actions legal."  (Plaintiff's brief, Doc. # 20, pp. 7-12).

*Recklessness*

Under Alabama law, "[a] person commits the crime of public lewdness if ... [h]e exposes his anus or genitals in a public place and is reckless about whether another may be present who will be offended or alarmed by his act[.]"  Ala. Code, § 13A-12-130(a)(1).[7] Plaintiff does not deny that the first element of the offense – that he exposed his anus or genitals in a public place – is satisfied; he challenges the recklessness element of the offense. For purposes of criminal liability, "[a] person acts recklessly with respect to a result or to a

---

[7]  Foster's defense is based on Klemetti's nudity, *i.e.*, recklessly "exposing his genitals in a public place"; Foster makes no argument that Klemetti committed a "lewd act."  (Doc. # 18, p. 6). Thus, as plaintiff argues, the second subsection of the public lewdness statute is not implicated in this case.

circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Ala. Code, § 13A-2-2(3). The commentary to the public lewdness statute indicates that "Nudity or 'streaking' in a public place where others may be present and who would be offended is covered by the statute, but participating in a nudist colony – private or public – where no person present or observing is likely to be affronted or alarmed is not covered." Id. (Commentary).[8]

Plaintiff testified that – while no one was at the public swimming area at the time at issue – "there's usually a lot of people there." (Klemetti depo., p. 23). Klemetti offered no evidence to contradict Foster's testimony that the area of Uphapee Creek, where plaintiff was nude, "is heavily used by the public for recreational activities." (Foster aff., ¶ 4). The undisputed evidence that plaintiff was naked – on a trail at about 5:00 p.m. in late May, in an area of the national forest heavily used by the public for recreational activities – is

---

[8] Plaintiff cites Texas cases interpreting the Texas disorderly conduct statute on which the Alabama statute is based for the proposition that exposing one's genitals is not inherently reckless. (Plaintiff's brief, pp. 9-11). Most of the cited cases pertain to the sufficiency of the notice provided by the charging instrument, not to the existence of probable cause. However, the court notes that plaintiff quotes language from one of the cases in which the court states, in *dicta*, that "Exposing one's genitals is not necessarily reckless or unlawful. It is reckless if the other person is a strange child, a strange adult, or the exposure takes place at high noon in the courthouse square, *or in any public place where others who might be offended are likely to be present*." (Plaintiff's brief, p. 11)(quoting Texas v. Rodriguez, 339 S.W.3d 680, 684 n. 17 (Tex. Crim. App. 2011)(emphasis added).

sufficient, as the commentary suggests, to satisfy the recklessness element of the public lewdness statute, or at least to lead a "man of reasonable caution" or one "of ordinary caution and prudence" to conclude that the element is satisfied.[9]

*Offended or Alarmed*

While the Alabama "indecent exposure" statute requires proof that the defendant's exposure of genitals was committed without consent of the "victim," plaintiff was not charged with this offense, which falls within Article 4 ("Sexual Offenses") of Chapter 6 ("Offenses Involving Danger to the Person") of the Alabama Criminal Code.  See United States v. Parvin, 31 So.3d 101 (Ala. 2009); Ala. Code § 13A-6-68, § 13A-6-70.  Rather, plaintiff was charged with "public lewdness," which falls within Chapter 12 of the criminal code ("Offenses Against Health and Morals").  Even assuming that a law enforcement officer cannot be a "victim" for purposes of indecent exposure, the section of the criminal code setting forth obscenity offenses, including public lewdness, has no "consent" provision comparable to that pertaining to sexual offenses.  Additionally, the plain language of § 13A-12-130(a)(1) requires only that the person be "reckless about whether another *may* be present who will be offended or alarmed by his act." § 13A-12-130(a)(1)(emphasis added); cf. Commentary to § 13A-6-68 (the indecent exposure provision "is consistent with the other

_____

[9] Plaintiff argues that "the majority of the people who would be there would be fishermen (who would not be affronted or alarmed by someone skinny dipping in the creek) and Auburn students (people who toilet paper trees in the city and usually drink to the point that they have to put signs in the swimming area prohibiting alcohol[.]" (Doc. # 20, p. 11). However, the court cannot find, without evidence, that the majority of the people who frequent this area of the national forest and its swimming area are fishermen and Auburn students, or that fishermen and Auburn students would not be offended or alarmed by the sight of a naked man in a public area of the national forest.

offenses in article 4 of chapter 6 in its regard for the effect of the act upon the victim, rather than the effort to regulate and protect the morals of society generally"). Accordingly, the court finds without merit plaintiff's argument that the "offended or alarmed" language of the public lewdness statute at issue requires that someone other than a law enforcement officer be present and witness the offense. See Ala. Code, § 13A-12-130, Commentary ("Nudity . . . in a public place where others may be present and who would be offended is covered[.]").[10]

*Dismissal of Federal Charges*

Plaintiff's contention that Foster lacked probable cause to levy the public lewdness charge against him because he was aware that the federal charges had been dismissed rests on a misunderstanding of the law regarding jurisdiction (*i.e.*, his contention that the State of Alabama cannot prosecute an offense that occurred in the Tuskegee National Forest, as the forest is "federal land"), and of the effect of the federal regulations on the charge under state law (*i.e.*, that "the Federal code stated that being publicly nude in the National Forest was legal, by th[e] fact that it was not made illegal"). (Plaintiff's brief, Doc. # 20, pp. 2-4).

Plaintiff contends that "jurisdiction is not an issue in this case and was not an issue in the prior cases, so [defendant is] throwing that smokescreen up." (Id. at p. 3). Plaintiff is incorrect. His claim that Foster acted unlawfully by pursuing charges against him in state court depends on his erroneous assumption that the State of Alabama did not have territorial jurisdiction to regulate plaintiff's conduct in the national forest. In Wilson v. Cook, 327 U.S.

---

[10] In resolving this issue, it is not necessary to rely on Foster's testimony that a college student also saw Klemetti while he was naked.

12

474 (1946) – a case dealing with the authority of the State of Arkansas to tax activity occurring within national forest lands – the U.S. Supreme Court concluded that, in the federal statute relating to the United States' acquisition of forest lands in the various states, "Congress in effect *has declined to accept exclusive legislative jurisdiction over forest reserve lands*, and expressly provided that the state shall not lose its jurisdiction in this respect nor the inhabitants 'be absolved from their duties as citizens of the State.'" Id., 327 U.S. at 486-87 (emphasis added).[11]  Several years later, in Oldham v. State, 67 So.2d 52 (Ala. App. 1953), the defendant contended that his state court criminal conviction should be set aside because the state lacked jurisdiction to prosecute him for activity that occurred within a national forest in Alabama.  The Alabama Court of Appeals disagreed, holding that "[t]he State of Alabama has criminal jurisdiction over all federal forest reservations lying and being within the State."  Id. at 53. The Alabama Supreme Court affirmed, concluding that the Alabama legislation consenting to the purchase of forest lands by the United States was "very similar" to the Arkansas statute considered by the U.S. Supreme Court in Wilson and,

---

[11]  The federal statute provides:

> The jurisdiction, both civil and criminal, over persons within national forests shall not be affected or changed by reason of their existence, except so far as the punishment of offenses against the United States therein is concerned; the intent and meaning of this provision being that the State wherein any such national forest is situated shall not, by reason of the establishment thereof, lose its jurisdiction, nor the inhabitants thereof their rights and privileges as citizens, or be absolved from their duties as citizens of the State.

16 U.S.C. § 480.

further, that the <u>Wilson</u> decision "fully support[s] the conclusion reached by the Court of Appeals" that the State of Alabama has jurisdiction to prosecute the defendant for a state crime committed in the national forest.  <u>Oldham v. State</u>, 67 So.2d 55 (Ala. 1953); <u>see also</u> <u>Ala. Code</u>, § 42-3-3.[12]  Thus, plaintiff's contention that there was no probable cause supporting the charge or his imprisonment because the offense occurred "on federal land" is without merit.

Plaintiff's federal supremacy argument is likewise unavailing.  He contends that probable cause is lacking as to the Alabama offense of public lewdness because being nude in the Tuskegee National Forest was "legal" on May 28, 2010, under federal law and cannot, therefore, be prosecuted under Alabama law.  He argues that the notice required for federal prosecution of his conduct was not posted at the forest on that day, but – as discussed *supra* at n. 1 – he has presented no competent evidence that this is so.  Even assuming that the federal charges were untenable for the reason argued by plaintiff, and even if plaintiff had presented admissible evidence to this court demonstrating the U.S. Forest Service's failure to post the notices required to support a criminal charge, the evidence would establish – at most – that the elements required to prove the *federal* offenses charged in the *federal* citations were not satisfied.  As the Alabama offense includes no requirement that a notice

_____

[12] Because the United States has declined to accept exclusive jurisdiction over national forest land (<u>Wilson</u>, 327 U.S. at 486-87), and because the *federal* court's assertion of criminal jurisdiction is not at issue here, the court need not examine the language of the "act or instrument of cession" (<u>see</u> <u>Ala.Code</u>, § 42-3-3) pertaining to the area of Tuskegee National Forest in which the events at issue occurred to conclude that the State of Alabama has at least concurrent jurisdiction.

prohibiting the conduct be posted, the Forest Service's failure to post such a notice is irrelevant to the Alabama charge of public lewdness.[13]  Plaintiff points to no federal law affirmatively granting individuals a right to visit national forests in the nude.  The "conflict" plaintiff raises is no more than a difference in the elements of proof between the federal charges levied against him and the state charge of public lewdness.  It does not, accordingly, give rise to federal preemption of the state criminal statute.  See Hughes v. Attorney General of Florida, 377 F.3d 1258, 1266 n. 11 (11th Cir. 2004)("conflict preemption" not at issue where compliance with both federal and state law is no problem and where the state statute presents no obstacle to the federal regulatory scheme)(citing Crosby v. National Foreign Trade Council, 530 U.S. 363, 372-73 (2000)); see also Carter v. State, 420 So.2d 292 (Ala. Crim. App. 1982)("If . . . the federal government does not have exclusive jurisdiction over an offense by virtue of the territoriality or preemption principles, then a crime against the United States may also be prosecuted as an offense against a state, *i.e.*, there is concurrent federal-state jurisdiction.")(citing 18 U.S.C. § 3231).  The dismissal of the federal charges, even if based on the U.S. Forest Service's failure to post notice, had no legal effect on plaintiff's subsequent prosecution under state law.  Therefore, even if Foster were aware of this particular problem precluding a successful prosecution on the federal citations issued to plaintiff, this knowledge has no bearing on the issue of whether he had probable cause to

---

[13] Plaintiff testified that, when the federal prosecutor dismissed the charges, he indicated that he might pursue them under the Assimilative Crimes Act and, further, that the attorney at the Federal Public Defender's office suggested that the prosecutor probably would not do so "because he's too busy to consider something like this." (Klemetti depo., pp. 61-64).

pursue the state criminal charge against the plaintiff.

The admissible evidence of record, viewed in the light most favorable to plaintiff, presents no genuine issue of material fact regarding whether Foster objectively had probable cause to believe that Klemetti had committed the state law offense of public lewdness, nor does it permit a reasonable inference that Foster did not actually "believe or entertain an honest and strong suspicion" that Klemetti was guilty of the charged offense. Plaintiff's state law malicious prosecution claim requires proof that Foster "'acted without probable cause and with malice.'" Walker, 62 So.3d at 492 (citation omitted). To establish his unlawful imprisonment claim based on his arrest by Foster on the state charges,[14] plaintiff must establish that his detention was unlawful; a detention resulting from an arrest supported by probable cause is not unlawful. Id. (citations omitted). Additionally, Klemetti's claim of intentional infliction of emotional distress requires proof that Foster's conduct was "extreme and outrageous." McAfee v. Shredders, Inc., 650 So.2d 871, 873 (Ala. 1994). To meet the threshold for outrage, Foster's conduct must have been "'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980)(citation omitted). Plaintiff contends that "the defendant's pursuing of the case in state court for something legal on Federal land was

---

[14] Plaintiff argues, "Since it is unlawful to arrest someone for half of a crime or no crime, then swearing out a complaint for a warrant and then detaining someone, handcuffing and booking that person is false imprisonment." (Doc. # 20, p. 14).

outrageous[,]" and that "[i]t is extreme and outrageous to pursue state charges that cannot succeed." (Doc. # 20, p. 15). In <u>McDuff v. Turner</u>, 679 So.2d 1071 (Ala. Civ. App. 1996), the court determined that the defendants' conduct in filing criminal noise ordinance charges against the plaintiff was supported by probable cause. Noting that the defendants "had the right to seek redress in the courts," and that they "were doing something they had a legal right to do" the court found that their conduct in pressing charges was not outrageous. <u>Id</u>. at 1075. While the defendants in <u>McDuff</u> were private citizens, the court's analysis applies with equal force to Klemetti's outrage claims. Because the state charge of public lewdness and Klemetti's resulting arrest and detention were supported by probable cause, Foster's conduct was not outrageous and it is not sufficient to support a claim for intentional infliction of emotional distress. As plaintiff has failed to establish the existence of a genuine issue of fact as to probable cause, he cannot prevail on the merits as to any of this state law claims. Accordingly, Foster is entitled to summary judgment on plaintiff's state law claims.

Federal Claim

Plaintiff brings a claim against Foster pursuant to 42 U.S.C. § 1983, alleging that Foster, under color of state law, violated his rights under the fourth amendment. Under federal law, "[p]robable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 734 (11th Cir. 2010)(citation omitted). This definition of probable cause is substantively identical to the definition set

17

forth in Alabama law. Cf. Walker, 62 So.2d at 492 (finding the question of probable cause

on a state law false imprisonment claim to be "identical to that decided by the federal court"

which had determined, for purposes of the plaintiff's § 1983 fourth amendment claim, that

the arrest was supported by probable cause). As discussed above, plaintiff has failed to

establish the existence of a genuine issue of material fact regarding probable cause. Because

Foster's actions in pressing a state charge of public lewdness and arresting plaintiff on that

charge were supported by probable cause, he cannot prevail on his § 1983 fourth amendment

claim. Brown, 608 F.3d at 734 ("[T]he existence of probable cause at the time of arrest is

an absolute bar to a subsequent constitutional challenge to the arrest.")(citations and footnote

omitted); Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010)("[T]he existence

of probable cause defeats a § 1983 malicious prosecution claim.")(citations omitted). Foster

is, accordingly, entitled to summary judgment on the merits of plaintiff's federal claim.

### Immunity

Foster argues that he is entitled to "peace officer" immunity under Alabama law as

to plaintiff's state law claims (Doc. # 18, pp. 10-12) and to qualified immunity as to

plaintiff's federal claim (id., pp. 15-19). Under Alabama law, a " ... State agent *shall* be

immune from civil liability in his or her personal capacity when the conduct made the basis

of the claim against the agent is based upon the agent's ... exercising judgment in the

enforcement of the criminal laws of the State, including, but not limited to, law enforcement

officers' arresting or attempting to arrest persons[, *or serving as peace officers under*

*circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code*

*1975*].” <u>Downing v. City of Dothan</u>, 59 So.3d 16 (Ala. 2010)(citations omitted; modification in original). “Simply stated, [§ 6-5-338(a)] shields every defendant who (1) is a 'peace officer,' (2) is performing 'law enforcement duties,' and (3) is exercising judgment or discretion.” <u>Howard v. City of Atmore</u>, 887 So.2d 201, 204 (Ala. 2003).

In his affidavit, Foster states that he “is a Conservation Enforcement Officer with the Wildlife and Freshwater Fisheries Division, Department of Conservation and Natural Resources,” that he “acted only within the line and scope of [his] law enforcement duties as a Conservation Enforcement Officer in all of [his] actions and decisions prior to, during and after the incident on May 28, 2010,” and that he “was enforcing the criminal laws of the State[.]” (Foster aff., ¶¶ 1, 9). Plaintiff asserts that Foster's authority as a Conservation Enforcement Officer is limited – pursuant to <u>Ala. Code</u>, §§ 9-2-65(a)[15] and § 9-11-5[16] – to enforcing the “laws of this state relating to birds, animals and fish” or “game and fish laws,” and that the immunity provided by <u>Ala. Code</u>, § 6-5-338(a) does not apply in this case because “defendant's duties do not include enforcement of criminal laws of the state or the

---

[15] This code provision sets forth the powers of “game and fish wardens,” and pertains to “conservation officers appointed by the commissioner of the department of conservation and natural resources.” <u>Ala. Code</u>, §§ 9-2-28, 9-2-65(a).

[16] This statute provides, in relevant part, that:

> The commissioner of conservation and natural resources, his wardens, agents and employees shall be and are hereby constituted peace officers of the state of Alabama with full and unlimited police power and jurisdiction to enforce the provisions of the game and fish laws and the rules and regulations promulgated thereunder[.]”

<u>Ala. Code</u>, § 9-11-5.

empowerment by laws to execute warrants or to arrest and to take into custody persons who violate criminal laws of the state." (Doc. # 20, pp. 16-17). While the powers of state conservation enforcement officers are primarily those set forth in the statutes cited by the plaintiff, Foster points to another section of the Alabama Code which provides that, "[i]n addition to all other power heretofore granted by law, marine police officers *and all other Department of Conservation and Natural Resources enforcement officers* shall have the power of peace officers in this state and may exercise such powers anywhere within the state." Ala. Code, § 33-5-5 (emphasis added).  In Ex Parte Duvall, 782 So.2d 244 (Ala. 2000), the Alabama Supreme Court observed that  "[c]onservation enforcement officers, as a general rule, are empowered to enforce this State's game and fish laws." Id. at 247.  The court concluded, however, that – under Section 33-5-5 of the Code – "a conservation enforcement officer has the authority to arrest an individual for violating a criminal statute." Id. The plaintiff in Duvall asserted state law claims of assault, unlawful arrest, false imprisonment, and conspiracy against two conservation enforcement officers – one on duty and the other off-duty – for their actions in stopping his car as he drove through the latter officer's neighborhood, pulling him from his car, handcuffing him and placing him under arrest. Id. at 245-46.  The court reasoned that "[g]iven the evidence indicating Marusich [the off-duty officer] knew of recent acts of vandalism in the neighborhood, and given the evidence that Marusich did not recognize the [plaintiff's] car as belonging to someone living on the cul-de-sac," the officers were justified in making an investigatory stop to determine what plaintiff was doing in the neighborhood; when plaintiff failed to comply with requests

20

to produce his driver's license, the officers had probable cause to arrest him. Id. at 248.  The Alabama Supreme Court concluded that both conservation enforcement officers were "peace officers" who were engaged in a "discretionary function" when they arrested the plaintiff. Id. at 247-48. Because the officers made a "*prima facie* showing that they arrested [the plaintiff] with probable cause and without bad faith or a malicious intent" and the plaintiff did not refute that showing, the Alabama Supreme Court concluded that the two officers were entitled to immunity under § 6-5-338.

In view of Duvall, it is clear that Foster has made a *prima facie* showing that he: "(1) is a 'peace officer,' (2) [was] performing 'law enforcement duties,' and (3) [was] exercising judgment or discretion." See Howard, 887 So.2d at 204.  The court has concluded previously that Foster had probable cause to believe that Klemetti had committed the offense of public lewdness. Thus, unless Klemetti carries his burden of establishing that Foster's conduct falls within an exception, Foster is entitled to the immunity provided by § 6-5-338. Id. at  205.

Klemetti argues, correctly, that a state agent is not entitled to discretionary function immunity if he "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."  (Doc. # 20, p. 17; see Duvall, 782 So.2d at 247-48). Klemetti contends Foster's conduct falls within this exception to discretionary function immunity because "it is beyond his authority to arrest on non-game laws; he acted willfully, maliciously, fraudulently and in bad faith in applying for the warrant against plaintiff[,]" and he "also acted under a mistaken interpretation of the law.  Since there

was no crime, then it was willful and malicious to seek a warrant for arrest when he knew the actions were legal at the time in Federal Law on Federal land."  (Doc. # 20, p. 17).

The "malice" required to defeat discretionary function immunity, however, is more than a lack of probable cause.  Rather, the plaintiff must "prove that the defendant's conduct was 'so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith,' by, for example, showing that the defendant had 'a personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment.'"  Ex Parte Tuscaloosa County, 796 So.2d 1100, 1107 (Ala. 2000).  In other words, to overcome defendant's discretionary function immunity, the plaintiff "must have presented substantial evidence of malice in fact, or actual malice." Id.  There is no competent evidence of record suggesting any improper motive on Foster's part, and plaintiff has not demonstrated that Foster acted "willfully, maliciously, fraudulently, [or] in bad faith." Plaintiff's contention that Foster acted under a "mistaken interpretation of the law" in concluding that his state charge against Klemetti was not precluded by federal law or by the previously-dismissed federal citations is without merit, as discussed above.  In view of the decision of the Alabama Supreme Court in Duvall, plaintiff's argument that Foster acted beyond his authority as a conservation enforcement officer must also fail.  Accordingly, Foster is also entitled to summary judgment on plaintiff's state law claims on the basis of "peace officer immunity."[17]

---

[17] Foster has not produced sufficient evidence of his job responsibilities as a conservation enforcement officer to establish his entitlement to summary judgment on plaintiff's federal claim

**Motion for Leave to Amend**

Within the time allowed by the court for amendment, plaintiff sought leave to amend his complaint. The proposed amendment differs little from plaintiff's original complaint, except that it adds language indicating that plaintiff's fourth amendment claim is based on violation of his constitutional right "against seizures without probable cause," and plaintiff seeks to bring a new claim under 42 U.S.C. § 1983 alleging a violation of his fifth and fourteenth amendment rights against "deprivation of liberty without due process of law through vindictive prosecution by initiating a case in state court as a result of the plaintiff's exercising of his statutory or constitutional rights in getting the prior Federal citations dismissed[.]"  (Doc. # 14-1, ¶¶ 15, 17).  Foster objected to plaintiff's motion, arguing that: (1) pursuant to 16 U.S.C. § 480, the State of Alabama has concurrent criminal and civil

---

on the basis of qualified immunity.  To meet the threshold requirement for qualified immunity – *i.e.* establishing that the challenged acts were within the scope of his discretionary authority – the defendant must introduce evidence that he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)(citation omitted); see also Brown, 608 F.3d at 734 n. 14 ("Prior to applying the two-part [qualified immunity] test, the initial inquiry in a qualified immunity case is whether the public official proves 'that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'")(citation omitted); Harbert International, Inc. v. James, 157 F.3d 1271, 1281-82 (11th Cir. 1998)(court must determine whether the defendant met his burden of establishing that he was acting within the scope of his discretionary authority before it can reach the question of whether defendant violated clearly established law). The evidence of record is not sufficient to permit a conclusion that Foster was "pursuing a job-related goal" when he sought a warrant in state court and arrested Klemetti on the charge of public lewdness. Foster's conclusory statement that he "acted only within the line and scope of [his] law enforcement duties as a Conservation Enforcement Officer in all of [his] actions and decisions" (Foster aff., ¶ 9) is insufficient. Harbert, 157 F.3d at 1282 ("'A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice.'")(citation omitted).

23

jurisdiction within Tuskegee National Forest and, therefore, he had the authority to commence the criminal action in Macon County; (2) "successive prosecutions for the same unlawful act will not offend the Constitution when they are brought under the laws of separate sovereigns" and, therefore, the charges in state court were not levied against the plaintiff in violation of the double jeopardy clause of the fifth amendment; and (3) he would be entitled to dismissal on the basis of qualified immunity because plaintiff's amended complaint does not allege the violation of a clearly established constitutional right.  (Doc. ## 16, 17).

It appears to the court that plaintiff seeks to assert a substantive due process claim.[18] The Supreme Court has held that "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." Conn v. Gabbert, 526 U.S. 286, 293 (1999)(citation and internal quotation marks omitted); see also Albright v. Oliver, 510 U.S. 266 (1994).  The substance of the plaintiff's allegation is that Foster deprived him of his liberty "through vindictive prosecution" as a result of the dismissal of his federal charges, which resulted from the plaintiff's exercise of his "statutory or constitutional rights" in defending against the claims. In Albright, the Supreme Court

---

[18]  Plaintiff alleges that he challenged his prosecution in state court and that the Macon County District Court dismissed the claims against him.  (Doc. # 1-1, ¶¶ 7-8; Doc. # 14-1, ¶¶ 9-10). Since he does not allege inadequate state remedies, or any deficiency in the process he was accorded in state court, it does not appear that plaintiff seeks leave to assert a violation of procedural due process.

declined to recognize a substantive right under the due process clause of the fourteenth amendment "to be free from criminal prosecution except upon probable cause." 510 U.S. at 269, 274-75.  In Albright, the Court observed that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it... . We have in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." Id. at 274 (citation omitted).  The Eleventh Circuit "'has identified malicious prosecution as a violation of the Fourth Amendment[.]'" Grider, 618 F.3d at 1256 (citation omitted).  "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." Id. (citation omitted).  Because plaintiff's proposed substantive due process claim amounts to no more than an attempt to recast his fourth amendment claim as a substantive due process violation, the motion for leave to amend is due to be denied as futile. See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010)("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'")(citation omitted).

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion for summary judgment (Doc. # 18) be GRANTED as to all of plaintiff's claims and, further, that plaintiff's motion for leave to amend his complaint (Doc. # 14) be DENIED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before February 16, 2012. Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  See  United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009)(citing Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993);  Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 2nd day of February, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

26